UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CROWN CELL INC,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>ECOVACS ROBOTICS INC,<br><br>　　　　　Defendant. | Case No. 21-cv-07890-SI<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**<br><br>Re: Dkt. Nos. 28, 35 |

Defendant Ecovacs Robotics Inc. ("Ecovacs"), filed the instant motion to dismiss the Second Amended Complaint ("SAC"). Dkt. No. 28 (MTD). In response, plaintiff Crown Cell Inc. ("Crown Cell"), filed a Motion for Leave to file a Third Amended Complaint ("TAC") before the Court ruled on the motion to dismiss the SAC. Dkt. No. 35 (Motion for Leave ("MFL")). Having reviewed the parties' submissions, the Court found these matters appropriate for resolution without oral argument and VACATED hearing pursuant to Local Rule 7-1(b). For the reasons stated below, defendant's motion to dismiss is GRANTED IN PART and plaintiff's motion for leave to file a third amended complaint is GRANTED.

**BACKGROUND**

**I.   The Second Amended Complaint**

Plaintiff Crown Cell Inc. is a privately held business incorporated in New York, with its principal place of business in Florida. Dkt. No. 21 (SAC) ¶¶ 5, 11. Crown Cell's primary business is the sale and resale of products on Amazon's online marketplace. *Id.* at ¶¶ 14-16. On February 2, 2022, Crown Cell filed the SAC seeking a Declaratory Judgment of No Trademark Counterfeiting, in addition to asserting three causes of action: (1) Fraud and Misrepresentation, (2) Breach of

Express Warranty, and (3) Breach of Implied Warranties. Dkt. No. 21. As alleged in the SAC, defendant "Ecovacs[,] is a manufacturer and merchant of home robotics products, including vacuum cleaners." *Id.* at ¶ 18. New England Technology Inc. ("NETi") is alleged to be Ecovacs's distributor. *Id.* at ¶¶ 18-21.

The SAC alleges Crown Cell, through a series of seven transactions from August 2019 to December 2020, purchased and acquired over 8,000 vacuum cleaners from Ecovacs through Ecovacs's distributor NETi.[1] *Id.* at ¶¶ 22, 24. Crown Cell alleges Ecovacs and NETi represented the vacuum cleaners as "authentic, refurbished units that were covered by a limited product warranty issued by Ecovacs to the end consumer which provided that the vacuum cleaners would be free from defects in materials and workmanship when used under normal conditions."[2] *Id.* at ¶ 23. The relevant portions of this warranty are reproduced below:

> CERTIFIED REFURBISHED PRODUCTS Limited Warranty – ECOVACS Robotics, Inc. warrants you, the original purchaser, that the ECOVACS product that you purchased will be free from defects in materials and workmanship when used under normal conditions for three (3) months from the product purchase date. This Limited Warranty applies only to certified refurbished products purchased and used in the United States and Canada. Some states/jurisdictions do not allow limitations on the duration of an implied warranty, so the above limitation may not apply to you.
>
> NO OTHER WARRANTIES – ECOVACS Robotics, Inc. does not warrant the functions contained in the ECOVACS product will meet your requirements. The entire risk as to the quality and performance of the ECOVACS product is with you. To the maximum extent permitted by applicable law, ECOVACS Robotics, Inc. and its suppliers disclaim all other warranties, either express or implied, including, but not limited to, implied warranties of merchantability and fitness for a particular purpose, with regard to the ECOVACS product and the accompanying written materials. This Limited Warranty gives you specific legal rights. You may have others which vary between states/jurisdictions.

Dkt. No. 28-2 ("Exhibit A").

After Crown Cell resold the vacuum cleaners to end consumers on Amazon, it received "a

---

[1] The invoices for these transactions were issued by NETi on "August 5, 2019, December 10, 2019, February 29, 2020, March 31, 2020, May 14, 2020, June 22, 2020, and December 10, 2020." SAC ¶ 24.

[2] These representations are alleged to have been made on (1) each of NETi's invoices, (2) through emails and telephone calls with Ecovacs's national sales manager and head of sales in mid-September 2019, (3) on the labeling of every pre-packaged vacuum cleaner identifying them as "Factory Refurbished[,]" and (4) through the "ECOVACS ROBOTICS - Ninety (90) Day *Refurbished Product* Limited Warranty[.]" SAC ¶¶ 24-26 (emphasis added).

2

1  high volume of complaints and returns" regarding their functionality. SAC at ¶ 31. Specifically, "they did not turn on, had a battery life of mere minutes, did not offer working suction, or did not offer a working mopping feature." *Id.* Crown Cell alleges while processing returns, it discovered a significant number of the purchased vacuum cleaners were not as represented or warranted, with "many of the vacuum cleaners being non-functional returns that were, upon information and belief, repackaged by Ecovacs and sold to Crown Cell without being refurbished or adequately tested to verify functionality." *Id.* at ¶ 32.

To support its claim for fraud, Crown Cell alleges "Ecovacs knew the representations were false and misleading because many of the Ecovacs vacuum cleaners were neither refurbished nor adequately tested to verify functionality." *Id.* at ¶ 51. Further, Crown Cell generally alleges Ecovacs intended to deceive or mislead Crown Cell, inducing Crown Cell to rely on Ecovacs's misrepresentations. *Id.* at ¶¶ 52, 53. Crown Cell alleges it "would not have purchased the Ecovacs' vacuum cleaners if it knew that Ecovacs' representations were false and misleading." *Id.* at ¶ 54.

To support its claim for breach of express warranty, Crown Cell alleges the representations made by Ecovacs—"a merchant of authentic Ecovacs vacuum cleaners"—expressly warrant the vacuum cleaners as refurbished, and Crown Cell relied on these representations. *Id.* at ¶¶ 57-59; *see also supra* note 2 and accompanying text (listing each of the alleged representations). Crown Cell alleges breach of express warranty because the vacuum cleaners "were not refurbished, were not functional, were not free from defects in materials and workmanship when used under normal conditions, and per the purchase terms, were not subject to return Crown Cell. [sic] As such, the value of the vacuum cleaners was substantially impaired to Crown Cell." *Id.* at ¶¶ 60, 61.

To support its claim for breach of implied warranties, Crown Cell alleges Ecovacs knew or had reason to know Crown Cell intended to resell the purchased vacuum cleaners on Amazon as "authentic, refurbished, fully functional Ecovacs vacuum cleaners[,]" and that Crown Cell relied on Ecovacs's "expertise and skill as the product manufacturer" to supply Crown Cell with vacuum cleaners conforming to those specifications. *Id.* at ¶¶ 65, 66. Crown Cell alleges breach based on Ecovacs's supply of non-conforming vacuum cleaners which "are not merchantable and are unfit for the particular purpose for which they were intended and of which Ecovacs had knowledge." *Id.*

3

at ¶¶ 67, 68.

Finally, to support a request for declaratory judgment, plaintiff alleges "Ecovacs submitted a complaint to Amazon on September 23, 2021, accusing Crown Cell of listing 'counterfeit' products." *Id.* at ¶ 38. This complaint along with the parties' subsequent communications, are alleged to demonstrate a substantial controversy exists which warrants issuance of a declaratory judgement. *Id.* at ¶ 71. Moreover, Crown Cell alleges a declaratory judgment "would finalize the controversy between the parties and offer them relief from uncertainty." *Id.* at ¶ 75.

## II.     Procedural Posture

On October 7, 2021, Crown Cell filed its original complaint, asserting (1) Declaratory Judgment of No Trademark Counterfeiting, (2) Intentional Interference with Contractual Relationship, and (3) Injunctive Relief. Complaint at 6-8 (Dkt. No. 1). On January 7, 2022, Ecovacs filed a motion to strike, or in the alternative, to dismiss Crown Cell's second claim for intentional interference with contractual relationship on the grounds that Ecovacs's complaint to Amazon was protected speech under Cal. Civ. Proc. Code § 425.16, California's anti-SLAPP statute. Dkt. No. 12 at 6-8.

On January 21, 2022, Crown Cell filed a First Amended Complaint ("FAC") alleging (1) fraud, (2) breach of express warranty, (3) breach of implied warranties, and (4) declaratory judgment of no trademark counterfeiting. FAC at 8-11 (Dkt. No. 16). The same day, Crown Cell also filed an opposition to Ecovacs's motion to dismiss stating the motion was moot based on the filing of the FAC, which no longer included a claim for intentional interference with contractual relationship. Opp'n at 2 (Dkt. No. 17).

On February 1, 2022, the Court granted the parties' stipulation whereby Crown Cell would file a SAC no later than February 4, 2022. Thus, plaintiff Crown Cell seeks leave to file a third amended complaint before the Court has decided a motion to dismiss on any of the three preceding complaints (the original complaint, FAC, or the currently operative SAC).

**LEGAL STANDARD**

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," and a complaint that fails to do so is subject to dismissal pursuant to Rule 12(b)(6). Fed. R. Civ. P. 8(a)(2). To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679.

In reviewing a Rule 12(b)(6) motion, courts must accept as true all facts alleged in the complaint and draw all reasonable inferences in favor of the non-moving party. *See Usher v. Cty of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, courts are not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citation omitted). The Ninth Circuit has repeatedly held "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (citations and internal quotation marks omitted).

**DISCUSSION**

**I.      Fraud and Misrepresentation**

Crown Cell's Fraud and Misrepresentation claim fails because it is barred by the economic

loss rule. The California Supreme Court articulates the rule as: "In general, there is no recovery in tort for negligently inflicted purely economic losses, meaning financial harm unaccompanied by physical or property damage." *Sheen v. Wells Fargo Bank, N.A.*, 12 Cal. 5th 905, 922 (2022) (internal quotation marks and citation omitted). To determine whether the economic loss rule applies, "California law asks whether the 'conduct ... violates a duty independent of the contract arising from principles of tort law.'" *Simulados Software, Ltd. v. Photon Infotech Priv., Ltd.*, 861 F. App'x 149, 152 (9th Cir. 2021) (quoting *Erlich v. Menezes*, 21 Cal. 4th 543, 551 (1999)).

Under some circumstances, fraudulent conduct has been considered independent enough from a breach of contract to circumvent the economic loss rule. *See Robinson Helicopter Co. v. Dana Corp.*, 34 Cal. 4th 979, 991 (2004).[3] Critically, the holding in *Robinson* is "limited to a defendant's affirmative misrepresentations on which a plaintiff relies *and which expose a plaintiff to liability for personal damages independent of the plaintiff's economic loss.*" *Id.* at 993 (emphasis added).[4]

Here, the SAC fails to allege facts such that Ecovacs's alleged breach of contract exposes

---

[3] In *Robinson*, the plaintiff (Robinson) manufactured helicopters and the defendant (Dana) manufactured a helicopter part known as a sprang clutch, which "functions like the 'free wheeling' clutch mechanism on a bicycle where the rider transmits power to the rear wheel by operating the pedals, but when the rider stops pedaling, the wheel continues to rotate." 34 Cal. 4th at 985. The Federal Aviation Administration (FAA) requires aircraft manufactures to obtain a "type certificate" and requires all aircraft to be produced exactly in accordance with that certificate. *Id.* "Any proposed changes must first be submitted to and approved by the FAA." *Id.* Robinson was issued a type certificate requiring the sprang clutches to be "ground at a particular level of hardness" to "avoid distortions that lead to cracking and failure." *Id.*
Accordingly, the level of hardness was specified in the parties' contract. *Id.* at 985-86. However, defendant—without notifying plaintiff or the FAA—changed its grinding process to a higher level of hardness and "continued to provide written certificates to Robinson with each delivery of clutches that the clutches had been manufactured in conformance with Robinson's written specifications (which specifications prohibited unapproved changes in Dana's manufacturing process)." *Id.* at 986. In determining the economic loss rule did not apply, the Court found "Dana's provision of faulty clutches exposed Robinson to liability for personal damages if a helicopter crashed and to disciplinary action by the FAA. Thus, Dana's fraud is a tort independent of the breach." *Id.* at 991.

[4] *Robinson* considered affirmative misrepresentations; it did not address whether intentional concealment constitutes an independent tort. 34 Cal. 4th at 991. In *Rattagan v. Uber Techs., Inc.*, 19 F.4th 1188 (9th Cir. 2021), the following question was certified to the California Supreme Court who has yet to issue an opinion: "Under California law, are claims for fraudulent concealment exempted from the economic loss rule?" *Rattagan*, 19 F.4th at 1193. This certified question poses no impact on the Court's analysis here because plaintiff alleges fraud in the form of affirmative misrepresentations. *See supra* note 2 and accompanying text.

1    Crown Cell to liability for personal damages independent of Crown Cell's economic loss. While

2    Crown Cell alleges Ecovacs made misstatements and misrepresented its products, the damages

3    Crown Cell alleges do not go beyond the value of the parties' contract. The SAC asserts damages

4    in general terms, providing facts relating solely to Crown Cell's alleged economic losses. SAC at

5    ¶ 55; *see also id.* at ¶ 53 ("Crown Cell reasonably relied on Ecovacs' misrepresentations when

6    purchasing over 8,000 Ecovacs vacuum cleaners at a cost of $800,000.00.").

7          Crown Cell's opposition cites *Robinson* for the proposition that its fraud claim is not barred

8    by the economic loss rule. Opp'n at 7-8 (Dkt. No. 33). However, Crown Cell fails to recognize

9    *Robinson*'s narrow holding and does not attempt to demonstrate it was exposed to liability beyond

10   the alleged breach of contract. *Id.* Crown Cell's failure to do so is compounded by the fact that the

11   SAC is Crown Cell's second attempt to draft a fraud claim that does not run afoul of the economic

12   loss rule. Similarly, the claim for fraud in Crown Cell's proposed TAC fails for the same reasons,

13   alleging the exact same facts to support fraud as the SAC. Dkt. No. 35-1.

14         Therefore, the motion to dismiss this claim is GRANTED without leave to amend.

15

16   **II.   Breach of Express Warranty**

17         The parties do not dispute the critical statutes controlling the pleading standard for a breach

18   of express warranty claim. Under California law, an express warranty is created by "[a]ny

19   affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes

20   part of the basis of the bargain[.]" Cal. Com. Code § 2313(1)(a). The same is true for "[a]ny

21   description of the goods which is made part of the basis of the bargain[.]" *Id.* at § 2313(1)(b).

22   Where a tender of goods has been accepted, "[t]he buyer must, within a reasonable time after he or

23   she discovers or should have discovered any breach, notify the seller of breach or be barred from

24   any remedy[.]" Cal. Com. Code § 2607(3)(A).

25         Ecovacs makes two arguments as to why the express warranty claim fails: (1) the SAC does

26   not allege Crown Cell made a claim pursuant to the terms of the written warranty after discovering

27   the alleged defects with the vacuum cleaners; and (2) Crown Cell's claim is barred by Cal. Com.

28   Code § 2607(3)(A) because the SAC fails to allege Ecovacs received pre-suit notice of the alleged

United States District Court
Northern District of California

1  breach.  MTD at 13-15 (Dkt. No. 28).  Only the first argument is contested as Crown Cell is
2  requesting leave to file a TAC to allege notice.  MFL (Dkt. No. 35).

### A. Ecovacs's First Argument

With respect to the first argument, caselaw makes clear a breach of express warranty claim is not premised on defects alone, but rather, on how the seller responds to the buyer's request to remedy those defects pursuant to the terms of the express warranty.  *Kent v. Hewlett-Packard Co.*, No. 09-5341 JF (PVT), 2010 U.S. Dist. LEXIS 76818, at *15-16 (N.D. Cal. July 6, 2010) ("Thus, HP is not liable for breach of express warranty merely because a product manifests recurring failures during the warranty period.  Rather, the question is whether Plaintiffs sought repairs, refunds, or replacements and, if so, whether HP responded appropriately under the warranty."); *see also*, *Ferranti v. Hewlett-Packard Co.*, No. 5:13-CV-03847-EJD, 2014 U.S. Dist. LEXIS 131249 (N.D. Cal. Sep. 16, 2014) (granting motion to dismiss breach of express warranty claim where "[t]he fact that Plaintiffs did receive replacement printers and were able to get assistance from Tech Support indicate[d] that HP did comply with its warranty.").  Ecovacs argues the SAC does not allege Crown Cell made any warranty claims—a fatal omission requiring dismissal.  MTD at 15 (Dkt. No. 28).

Crown Cell opposes, first arguing its claim for breach of express warranty extends beyond Ecovacs's written limited warranty.  Opp'n at 8-10 (Dkt. No. 33).  Specifically, Crown Cell alleges four distinct express warranties were made and breached by Ecovacs when it supplied non-conforming vacuum cleaners, namely:

(1) in invoices to Crown Cell from the intermediary, NETi, Ecovacs represented the products were "authentic, refurbished units";  (SAC at ¶ 23)

(2) Ecovacs's National Sales Manager and Head of Sales for North America made representations regarding the refurbished nature of the vacuum cleaners directly to Crown Cell "via emails and telephone calls";  (*Id.* at ¶ 24)

(3) Ecovacs labeled every pre-packaged vacuum cleaner expressly warranting them as "authentic factory refurbished Ecovacs' vacuum cleaners";  (*Id.* at ¶ 25) and,

(4) Ecovacs's written "*Refurbished Product* Limited Warranty" expressly warrants the

8

1  vacuum cleaners are refurbished and "will be free from defects in materials and workmanship when
2  used under normal conditions." Exhibit A (Dkt. No. 28-2) (emphasis added); SAC at ¶ 26.

3  Next, Crown Cell argues breach did occur and was properly alleged, because "Crown Cell
4  clearly articulates the existence of multiple express warranties beyond those created by the
5  representations in the Limited Warranty. Moreover, Crown Cell explicitly alleges that those express
6  warranties were breached." Opp'n at 10-11 (Dkt. No. 33). Crown Cell identifies a breach, noting
7  "[t]he basis for that breach is Defendant selling vacuum cleaners to Crown Cell that were not in fact
8  refurbished." *Id.* at 10.

9  Here, the SAC fails to properly plead a breach of express warranty claim. In order for
10 Ecovacs to have breached the written limited warranty, Crown Cell must have made a claim
11 pursuant to the warranty terms. *See supra* p.8 (discussing *Kent* and *Ferranti*). The SAC does not
12 allege any such claim was made. With respect to the other three warranties, Crown Cell does not
13 distinguish *Kent* or *Ferranti*, or explain why they do not apply. Moreover, pre-suit notice would
14 still need to be alleged to make out a proper claim. *See* discussion *infra*.

16 **B.    Ecovacs's Second Argument**

17 Ecovacs's second argument asserts Crown Cell's claim is barred by Cal. Com. Code
18 § 2607(3)(A) because the SAC fails to allege Ecovacs received pre-suit notice of the alleged breach.
19 MTD at 13-15 (Dkt. No. 28).

20 Caselaw makes clear that pre-suit notice must be alleged in order to plead a proper claim for
21 breach of express warranty. *Alvarez v. Chevron Corp.*, 656 F.3d 925, 932 (9th Cir. 2011). "To
22 avoid dismissal of a breach of contract or breach of warranty claim in California, a buyer must plead
23 that notice of the alleged breach was provided to the seller within a reasonable time after discovery
24 of the breach." *Id.* (internal quotation marks and citation omitted). "[T]he notice requirement means
25 pre-suit notice[.]" *Id.*

26 In response to this argument, Crown Cell requests leave to amend to plead notice after briefly
27 attempting to show it properly notified Ecovacs of breach "via email to [NETi]," who "provided
28 notice to [Ecovacs]." Opp'n at 11 (Dkt. No. 33). Crown Cell's point heading for this argument

9

states it is a third-party beneficiary to a contract between Ecovacs and Neti, but the legal significance of this designation is not explained. *Id.*

Here, the express warranty claim fails because it only alleges Ecovacs misrepresented the products as "refurbished." SAC at ¶¶ 24-26, 58-60. This alleged misrepresentation, alone, does not amount to a breach of express warranty without allegations evidencing Ecovacs received pre-suit notice of the alleged issues and the opportunity to cure and avoid litigation. *See Alvarez*, 656 F.3d at 932. No such notice is alleged in the SAC. Therefore, the motion to dismiss this claim is GRANTED with leave to amend.

### III. Breach of Implied Warranties

Crown Cell's claim for breach of implied warranties fails because Ecovacs's limited warranty properly disclaims all implied warranties. In California, the implied warranty of merchantability may be excluded through conspicuous writing and "must mention merchantability[.]" Cal. Com. Code § 2316(2). Excluding the implied warranty of fitness for a particular purpose requires a conspicuous writing. *Id.*

The genesis of Crown Cell's claim is "[b]ecause the Ecovacs vacuum cleaners supplied by Ecovacs and purchased by Crown Cell are either not refurbished or not fully functional, said vacuum cleaners are not merchantable and are unfit for the particular purpose for which they were intended[.]" SAC at ¶ 67. In response, Ecovacs presents four reasons why this claim should be dismissed, one being the limited warranty expressly disclaims all implied warranties. MTD at 16-20 (Dkt. No. 28). The Court finds this argument persuasive.

While Crown Cell makes various arguments in opposition, none of them address the plain language of Ecovacs's warranty explicitly disclaiming all implied warranties. *See* Opp'n at 12-13 (arguing Crown Cell properly makes a claim for breach of implied warranties based on its status as a third-party beneficiary, questioning whether Ecovacs's warranty to the "original purchaser" applies to Crown Cell, and requesting leave to amend to allege notice of breach was properly given to Ecovacs).

The Court therefore GRANTS the motion to dismiss this claim without leave to amend.

### IV. Declaratory Judgment

Crown Cell's request for a declaratory judgment is proper and Ecovacs has not demonstrated the controversy is moot. The Declaratory Judgment Act provides that, "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such a declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). Not only must an actual controversy between interested parties have occurred, the "actual controversy must [also] exist . . . through all stages of the litigation." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (internal quotation marks and citation omitted). The Declaratory Judgment Act confers "unique and substantial discretion" upon district courts "in deciding whether to declare the rights of litigants." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995).

A case becomes moot "when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Already, LLC*, 568 U.S. at 91 (internal quotation marks and citation omitted). "It is well settled that 'a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice.'" *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) (quoting *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982)). "[A] defendant claiming that its voluntary compliance moots a case bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Id.* at 190.

Here, there is an actual and ongoing controversy concerning Crown Cell's right to use Ecovacs's trademark and Ecovacs has failed to meet its burden for mootness. Crown Cell asserts that "[b]y virtue of Ecovacs's complaint to Amazon accusing Crown Cell of listing 'counterfeit' products, as well as the parties' subsequent communications, a substantial controversy exists between Crown Cell and Ecovacs, which have adverse legal interests, of sufficient immediacy and reality to warrant issuance of a declaratory judgment." SAC at ¶ 71. In response, Ecovacs provided the following statement in its MTD the SAC: "Further, Ecovacs is informing Crown Cell now, here in this written brief, that it will not sue Plaintiff for trademark infringement as to the vacuums it purchased from NETi on all the dates alleged in the SAC." MTD at 21 (Dkt. No. 28). This statement

does not amount to an "unconditional and irrevocable" covenant which the Supreme Court found met the burden imposed by the voluntary cessation test. *Already, LLC*, 568 U.S. at 93. Therefore, the Court DENIES Ecovacs's motion to dismiss Crown Cell's declaratory judgment.

## CONCLUSION

For the foregoing reasons and for good cause shown, the Court rules on the motion to dismiss the SAC as follows:

(1) GRANTS with respect to claim 1 (Fraud) WITH PREJUDICE;

(2) GRANTS with respect to claim 2 (Breach of Express Warranties) WITHOUT prejudice;

(3) GRANTS with respect to claim 3 (Breach of Implied Warranties) WITH PREJUDICE;

(4) DENIES with respect to claim 4 (Declaratory Relief re Trademark Infringement).

Plaintiff shall file an amended complaint on or before September 16, 2022.

**IT IS SO ORDERED**.

Dated: September 6, 2022

SUSAN ILLSTON
United States District Judge